## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| MONTGOMERY COUNTY,<br>TENNESSEE, | ) |
| | ) |
| Plaintiff/Appellee, | ) Montgomery Circuit No. C11-319 |
| | ) |
| VS. | ) Appeal No. 01A01-9807-CV-00343 |
| | ) |
| GEORGIA NICHOLS, et al, | ) |
| | ) |
| Defendants/Appellants. | ) |

**FILED**

July 27, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE
THE HONORABLE JAMES E. WALTON, JUDGE

**LARRY B. WATSON**
**WATSON & ATKINS, P.C.**
Clarksville, Tennessee
Attorney for Appellants

**GREGORY D. SMITH**
Clarksville, Tennessee
Attorney for Appellee

**AFFIRMED & REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Georgia Nichols, Justine Jones and Charles Nichols, both individually and as

guardian and/or conservator for Georgia Nichols (hereafter collectively referred to as "the Defendants"), appeal from an order that granted a Rule 60 motion filed by Montgomery County ("the County") subsequent to an order of voluntary nonsuit. This order directed the repayment of $101,000 that had been withdrawn from the trial court clerk by the Defendants. For the reasons hereafter stated, we affirm.

**Facts and Procedural History**

On January 24, 1996, the County commenced this condemnation action against Georgia Nichols for the purpose of acquiring real property believed to be owned by Nichols, and because "[s]aid property [was] necessary in order to meet federal regulations relating to 'safe flight approach paths'" to airports. Thereafter, Nichols filed an answer to the County's petition that admitted that "she is one of the owners of the property that is the subject of this litigation." In addition to responding to the County's factual allegations, Nichols challenged the County's right to take the property and asserted that the County "failed to comply with the laws of condemnation in eminent domain by failing to recite the amount it has established as [the land's] fair market value and by further failing to remit that amount into Court." Subsequently, the County filed an amended petition (pursuant to an agreed order allowing for such filing) that added additional named defendants alleged to be partial owners of the subject property. The County's amended petition further alleged the fair market value of the subject property to be $101,000. Moreover, the County paid $101,000 to the trial court clerk. After the $101,000 had been paid to the clerk, the Defendants filed a "request to withdrawal of funds," which stated:

> Defendants request pursuant to Tennessee Code Annotated 29-17-701 for the Clerk to pay to them, without prejudice to any of their rights, the sums so deposited with the Clerk in this cause. The Defendants further agree to refund the difference between such sum and the final award in the cause if the final award be less than the sum paid in the Court.

The trial court granted the Defendants' above request and entered a written order directing "that the Clerk pay to the Defendants all sums deposited with the Clerk in this cause." Accordingly, the trial court clerk thereafter paid the Defendants the $101,000.

2

On January 16, 1997, after all of the above events had transpired, the County filed a notice of voluntary nonsuit.[1]  Shortly thereafter, the Defendants filed a written response to the County's notice of voluntary nonsuit, wherein they objected to the County's notice of nonsuit and requested a hearing regarding the same.  After such a hearing was eventually held and argument was presented, the trial court entered an order on August 22, 1997 that ordered dismissal of the case without prejudice.[2]

On February 25, 1998 (13 months after the notice of voluntary nonsuit, but only 187 days after the order of voluntary nonsuit), the County filed a motion seeking "an order that Defendant[s] be required to return all funds submitted by [the County] to the Clerk." Thereafter, on March 12, 1998, the County filed a separate "Motion to Modify Nonsuit Order ... pursuant to Tenn. R. Civ. P. 60 ...." This similar "motion to modify" again sought "an order that Defendants return the funds deposited by [the County] with the Clerk." The Defendants then filed a response to the County's motion(s) contesting said motion(s).

On June 2, 1998, the trial court ordered the Defendants to return $101,000 to the court clerk, after which the Defendants filed a notice of appeal.  As it is the subject of some argument on appeal, we note that the trial court's order further stated the following:

> IT IS FURTHER ORDERED that if Defendant[s] [wish] to have a hearing regarding potential costs and attorney fees, related to the defense of the above styled cause of action, [pursuant to Tennessee Code Annotated section 29-17-812(b)] [they] must contact counsel for Plaintiff and the Clerk of this Honorable Court within thirty (30) days of this order to set a hearing on said matter.

On appeal, the Defendants' brief sets forth the following as an issue on appeal: "Whether the trial court erred in setting aside an order of nonsuit pursuant to TRCP Rule

---

1. Though it has no effect on our disposition of this case on appeal, we note that the County's brief explains that the County's need for condemnation of the subject property ceased to exist (*i.e.*, the F.A.A. changed a prior finding on "safe flight approach zones").  Moreover, the Defendants' trial court pleadings state that, after the County filed its notice of voluntary nonsuit, the County offered to purchase the subject land for the $101,000 "[a]s a courtesy to Defendants," to which the Defendants declined.

2. Though the Defendants originally disputed the County's right to a voluntary nonsuit in the trial court, they admit in their brief that, "[i]n the present case[,] there was no order of possession and therefore [the Defendants] agree [the County] could properly take a nonsuit." Cf. Anderson v. Smith, 521 S.W.2d 787, 791 (Tenn. 1975) ("the condemner has the right to take a nonsuit at any time prior to the case being submitted to the trier of fact for decision, unless the condemner has taken possession of the property under court order issued under circumstances leaving nothing to be decided by the court except the compensation to be paid the owner for the land taken").

3

60 et seq., TRCP Rule 59 and setting a hearing to determine liability and damages, when the notice of nonsuit was filed thirteen (13) months earlier." Aside from responding to the Defendants' issue, the County's brief further raises the additional issue of whether the order appealed from was a final order subject to an appeal as of right. See Tenn. R. App. P. 3(a).

## Analysis

Rule 60 of the Tennessee Rules of Civil Procedure establishes the following:

> **60.01. Clerical Mistakes. --** Clerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders. ....

> **60.02. Mistakes -- Inadvertence -- Excusable Neglect -- Fraud, etc. --** On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud ... , misrepresentation, or other misconduct of an adverse party; ... or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. ....

Tenn. R. Civ. P. 60. The Defendants assert in their brief, however, "that Rule 60 is inapplicable in that the present case contains none of the criteria necessary to invoke the rule." We summarily reject this contention, and find that the circumstances upon which the County's Rule 60 motion were based were appropriate for relief under Rule 60. We base this finding, in part, upon the express language of Tennessee Code Annotated section 29-17-701(a), and upon the express language set forth in the Defendants' original request to withdraw the $101,000. Section 29-17-701(a) states:

> (a) Whenever the state of Tennessee, its counties or municipalities, institutes a condemnation proceeding in any court ... to acquire any property or property rights, such condemner *may* deposit with the clerk of such court at the time of the filing of the petition such amount as it shall determine that the owner is entitled to and the owner *may*, if he so desires, make written request to the clerk to pay to him, without prejudice to any of his rights, the sum so deposited with the clerk, and the clerk shall pay to the owner the sum so deposited, *provided the owner agrees to refund the difference between such sum and the final award in the case if the final award be less than the sum so paid into court or that a judgment may be entered against him in such case for the difference.*

Tenn. Code Ann. § 29-17-701(a) (Supp. 1998) (emphasis added). The Defendants'

4

withdrawal request, which was filed with the trial court, similarly stated:

> *The Defendants further agree to refund the difference between such sum [$101,000] and the final award in the cause if the final award be less than the sum paid in the Court.*

In this case, the "final award" for the property that was the subject of this suit was zero dollars based upon the voluntary nonsuit that was *not* appealed.[3] Pursuant to an earlier interlocutory order, however, the Defendants had withdrawn $101,000 from the trial court clerk. Therefore, the Defendants were either to refund the $101,000 (the difference between the amount withdrawn and the final award in the case), or to have a judgment entered against them for the $101,000. The trial court's order that dismissed the County's condemnation action (the dismissal of which is *not* challenged or before this Court on appeal) did not rectify this prior disposition of funds.[4]

The Defendants further assert in their brief that the County "did not file its motion styled 'Motion' and 'Motion to Modify Nonsuit Order' until thirteen (13) months after the notice of nonsuit .... This is beyond ... the time frame pursuant to TRCP Rule 60 ...." We need not resolve whether the County's motion was required to be filed "not more than one year after the ... order ... was entered," because, based upon the facts and circumstances in this case, the County's motion was filed within a reasonable time *and* was filed within one year of the order of voluntary nonsuit. Contrary to the Defendants' position, the timeliness of a Rule 60 motion after a voluntary nonsuit should be measured from the date of entry of the order of voluntary nonsuit, and not from the date of filing of the notice of voluntary nonsuit. In so concluding, we are guided, in part, by this Court's prior opinion in Evans v. Perkey, 647 S.W.2d 636 (Tenn. App. 1982), which dealt with whether the one-year statute of limitations for reinstituting a suit pursuant to Tennessee Code Annotated section 28-1-105 starts from the filing of a notice of voluntary nonsuit, or from the entry of the order of voluntary nonsuit. In Evans, we recognized that our supreme court previously stated in Rickets v. Sexton, 533 S.W.2d 293 (Tenn. 1976):

> The lawyer for the plaintiff is the sole judge of [voluntary nonsuits] and the

---

3. See supra note 2.

4. We surmise from the County's brief that the County apparently did not anticipate that the Defendants would ultimately fail to repay the $101,000.

5

trial judge has no control over it. It is not necessary that he approve the action of the plaintiff's counsel by signing any order; nor may he nullify the rules by an order 'disallowing' the nonsuit. All that is required to dismiss prior to the trial, in the absence of the existence of any of the exceptions [set forth in Rule 41], is the filing of a written notice of dismissal.

Evans, 647 S.W.2d at 640 (quoting Rickets, 533 S.W.2d at 294). After quoting this language from Rickets, however, this Court in Evans went on to state:

At first blush the reading of the [first] sentence quoted above would indicate that nothing more than the written notice is necessary to finalize the case. However, this statement of the court is dicta and not necessarily pertinent to the *Rickets* case .... In *Rickets* the court was concerned with the right of a party to take a voluntary nonsuit and the lack of power of the court to deprive him of that right. We construe the *Rickets* court to be saying that the plaintiff in that case had done all that was required to be done when he gave written notice of his intention to take a nonsuit. It was not necessary for the court to grant permission or enter an order permitting it to be done. However, we do not find the court to be saying that a judgment or decree need not be entered for final adjudication of a case.

647 S.W.2d at 640-41. As such, we concluded in Evans that "the one-year statute of limitations ran from the date of the entry of the order of the court and not from the date of filing the notice of nonsuit." Id. at 641. Similarly, as we stated above, the timeliness of a Rule 60 motion after a voluntary nonsuit should be measured from the date of entry of the order of voluntary nonsuit, and not from the date of filing of the notice of voluntary nonsuit.[5]

In summary, we conclude that, based upon the facts and circumstances of this case, the trial court did not abuse its discretion by ordering the Defendants to repay the $101,000 that was paid to them.

Lastly, we must address the County's contention that the order appealed from was not a final order subject to an appeal as of right. See Tenn. R. App. P. 3(a). We disagree with this contention, as it is based upon the false premise that "[t]he Trial Court's last order, dated/filed June 2, 1998 specifically sets another hearing date in this case in the order itself." The trial court's June 2, 1998 order does *not* set another hearing date. It simply states as *dicta*, "*if* Defendant[s] wish to have a hearing regarding potential costs and

_____

5. This is, of course, assuming that the order of voluntary nonsuit does not expressly provide that it is to be effective as of the date the notice of appeal was filed. No such provision was set forth in the trial court's order in this case. It should be noted, however, that we express no opinion herein as to the propriety of any such retroactive order. But cf. Snell v. Leffew, 558 S.W.2d 849 (Tenn. App. 1977) (finding that the lower court had been without authority to make an order of voluntary nonsuit effective on an earlier date, but reasoning that the lower court was without such authority because the plaintiff had only orally provided notice of voluntary nonsuit on the earlier date and had not complied with Rule 41.01 by filing a written notice of voluntary nonsuit).

6

attorney fees ... [pursuant to Tennessee Code Annotated section 29-17-812(b)[6]] [they] must contact counsel for [the County] and the Clerk of this Honorable Court within thirty (30 days of this order to set a hearing on said matter." We have not been cited to any pleading in the record, however, wherein the Defendants previously asserted any such claim for costs and expenses, nor have we found any such asserted claim upon review of the record. Therefore, the trial court's comments simply reflected that the trial court might entertain such a claim, but only *if* it were thereafter asserted within thirty days. We note, however, that the County has maintained that it "does not oppose a hearing on reasonable attorney fees or reasonable expended costs relating to Defendants' actions defending ... this case."

**Conclusion**

Accordingly, we hereby affirm the trial court and remand this case to the trial court for any further proceedings as may be deemed necessary. Costs on appeal are taxed to the Defendants, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____

6. Tennessee Code Annotated section 29-17-812(b) provides:

> [T]he state court having jurisdiction of a proceeding initiated by any person, agency or other entity to acquire real property by condemnation shall tax the bill of costs prepared by the clerk against the condemner and shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for the owner's reasonable disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of condemnation proceedings, only if:
> > (1) the final judgment is that the acquiring party cannot acquire the real property by condemnation; or
> > (2) The proceeding is abandoned by the acquiring party.

Tenn. Code Ann. § 29-17-812(b) (Supp. 1998).

7

_____

CRAWFORD, P.J., W.S.

_____

FARMER, J.

8